IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

NOV 1 2017

JAMES W. McCORMACK, CLERK
By:_____
                              DEP CLERK

**DAVID POINTER, MICHAEL MONDAY,
And MICHAEL HALL, individually and on
behalf of all others similarly situated**

**PLAINTIFFS**

v.                    CASE NO. 4:17cv 772-SWW

**DIRECTV, LLC; DAVID MOSES
d/b/a/ SKY CONNECT, ENDEAVOR
COMMUNICATIONS, ENDEAVOR
HOLDINGS, and SKY HIGH COMMUNICATIONS;
MOSES CAPITAL GROUP, LLC; and
MOSES HOLDINGS, LLC**

This case assigned to District Judge _Wright_
and to Magistrate Judge _Deere_

**DEFENDANTS**

## CLASS AND COLLECTIVE ACTION COMPLAINT

### I. INTRODUCTION

1.      This is an action for violations of the Fair Labor Standards Act, Arkansas

Minimum Wage Act, and Missouri Minimum Wage Law. Defendants DirecTV, LLC and

David Moses operated a satellite installation business in Arkansas and Missouri to sell

DirecTV services. Plaintiffs were satellite installation and repair technicians who installed

DirecTV satellite services. DirecTV and Moses provided Plaintiffs and their other

technicians with uniforms and training, told them which jobs to complete, and otherwise

controlled their work. DirecTV area mangers inspected the work done by Plaintiffs and

the other technicians to ensure the work met DirecTV's standards, and if the job did not

satisfy DirecTV, Plaintiffs and the other technicians would not be paid for the work.

Plaintiffs and the other technicians could not turn down jobs and they were required to

purchase materials from Perfect 10 – a DirecTV affiliated satellite materials provider. Yet,

Page **1** of 37

despite controlling almost every aspect of the employment relationship, DirecTV and David Moses classified Plaintiffs and the other technicians as independent contractors and did not pay them overtime. Plaintiffs bring this suit individually and on behalf of other technicians to recover minimum wage and overtime payments due under the Fair Labor Standards Act, Arkansas Minimum Wage Act, and the Missouri Minimum Wage Law.

## II. Parties, Jurisdiction, and Venue

2.      Plaintiff David Pointer is a citizen of Lonoke County, Arkansas. Pointer worked for Defendants as a satellite installation and repair technician in Arkansas from approximately April 2013 until April 2017. During the past three years, Pointer has worked more than 40 hours in one or more workweeks, and he was not paid overtime compensation. Also, during the past three years, Pointer was not paid the minimum wage for all his hours worked up to 40 in a workweek. At all times relevant to this complaint, Pointer was classified as an independent contractor, and thus classified as exempt from the minimum wage and overtime requirements of the FLSA and AMWA. His consent to join this action is attached as Exhibit "A."

3.      Plaintiff Michael Monday is a citizen of Garland County, Arkansas. Monday worked for Defendants as a satellite installation and repair technician in Arkansas from approximately March 2016 until March 2017. During the past three years, Monday has worked more than 40 hours in one or more workweeks, and he was not paid overtime compensation. Also, during the past three years, Monday was not paid the minimum wage for all his hours worked up to 40 in a workweek. At all times relevant to

this complaint, Monday was classified as an independent contractor, and thus classified as exempt from the minimum wage and overtime requirements of the FLSA and AMWA. His consent to join this action is attached as Exhibit "B."

4.      Plaintiff Michael Hall is a citizen of Lonoke County, Arkansas. Hall worked for Defendants as a satellite installation and repair technician in Arkansas from approximately April 2017 until June 2017. During the past three years, Hall has worked more than 40 hours in one or more workweeks, and he was not paid overtime compensation. Also, during the past three years, Hall was not paid the minimum wage for all his hours worked up to 40 in a workweek. At all times relevant to this complaint, Hall was classified as an independent contractor, and thus classified as exempt from the minimum wage and overtime requirements of the FLSA and AMWA. His consent to join this action is attached as Exhibit "C."

5.      Defendant DirecTV, LLC is a foreign limited liability company with its principal place of business in California. DirecTV is one of the largest satellite television services providers in the United States, providing satellite television services to more than 20 million domestic subscribers, including within Arkansas and Missouri. DirecTV is an employer of Plaintiffs and putative class members within the meaning of the Fair Labor Standards Act, Arkansas Minimum Wage Act, and Missouri Minimum Wage Law. DirecTV can be served through its registered agent The Corporation Company, 124 West Capitol Avenue, Suite 1900, Little Rock, Arkansas 72201.

6.      Defendant David Moses is a citizen of Cabot, Arkansas. David Moses is known to use the names Endeavor Communications, Endeavor Holdings, Sky Connect,

and Sky High Communications to conduct business, and he may have other business names as well. Moses operated these businesses in Arkansas and Missouri. Moses is an employer of Plaintiffs and putative class members within the meaning of the Fair Labor Standards Act, Arkansas Minimum Wage Act, and Missouri Minimum Wage Law. Upon information and belief, David Moses resides at 1115 Greystone Boulevard, Cabot, Arkansas 72023.

7.    Defendant Moses Capital Group, LLC, is an Arkansas limited liability company formed in June 2015. Upon information and belief, Moses Capital Group, LLC operated in Arkansas and Missouri. Moses Capital Group, LLC is an employer of Plaintiffs and putative class members within the meaning of the Fair Labor Standards Act, Arkansas Minimum Wage Act, and Missouri Minimum Wage Law. Moses Capital Group can be served through its registered agent, David Moses, who is believed to reside at 1115 Greystone Boulevard, Cabot, Arkansas 72023.

8.    Defendant Moses Holdings, LLC, is an Arkansas limited liability company formed in June 2015. Upon information and belief, all members of Moses Holdings, LLC are citizens of Arkansas. The Arkansas Secretary of State is believed to have revoked the status of Moses Holdings, LLC for nonpayment of franchise tax. Upon information and belief, Moses Holdings, LLC operated in Arkansas and Missouri. Moses Holdings, LLC, is an employer of Plaintiffs and putative class members within the meaning of the Fair Labor Standards Act, Arkansas Minimum Wage Act, and Missouri Minimum Wage Law. Moses Holdings, LLC can be served through its registered agent David Moses, who is believed to reside at 1115 Greystone Boulevard, Cabot, Arkansas 72023.

9.      At all relevant times, Defendants jointly controlled and directed the work of Plaintiffs and the putative class members. As a result, Defendants are joint employers of Plaintiffs and putative class members and Defendants are each directly liable for the violations of the Fair Labor Standards Act, Arkansas Minimum Wage Act, and Missouri Minimum Wage Law complained of in this case.

10.     At all relevant times, Plaintiffs and the putative class members have been entitled to the rights, protections, and benefits of the Fair Labor Standards Act, Arkansas Minimum Wage Act, and Missouri Minimum Wage Law.

11.     At all relevant times, Plaintiffs and the putative class members have been "employees" of Defendants. 29 U.S.C. § 203(e); Ark. Code Ann. § 11-4-203(3); Mo. Rev. Stat. § 290.500(3).

12.     At all relevant times, Defendants were the "employers" of Plaintiffs and the putative class members. 29 U.S.C. § 203(d); Ark. Code Ann. § 11-4-203(4); Mo. Rev. Stat. § 290.500(4).

13.     Jurisdiction of this action is conferred on the Court by 29 U.S.C. §§ 216(b), 217; and 28 U.S.C. § 1331.

14.     This Court has jurisdiction on Plaintiffs' state law claims pursuant to the Court's supplemental and pendent jurisdiction. 28 U.S.C. § 1367.

15.     Venue lies within this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred within this district. Specifically, throughout the relevant period, Defendants maintained offices in

this district and Plaintiffs regularly performed satellite installation and repairs within this district.

### III. FACTS

16.    Defendant David Moses has owned and operated a satellite installation and sales business for some time. Although his businesses have sometimes used the trade names "Endeavor Communications," "Endeavor Holdings," "Sky Connect," and "Sky High Communications," he has not legally formed separate entities to conduct businesses with those names. Moses, however, serves as the registered agent for Moses Capital Group, LLC and Moses Holdings, LLC. Moses Capital Group and Moses Holdings are mere instrumentalities and the alter ego of David Moses, and all are part of a single integrated enterprise. As a result, David Moses, Moses Capital Group, and Moses Holdings are jointly and severally liable for the violations complained of herein. David Moses is also individually liable because he is an "employer" of Plaintiffs and putative class members. David Moses, Moses Capital Group and Moses Holdings will be collectively referred to as the "Moses Defendants."

17.    Upon information and belief, the Moses Defendants contracted with DirecTV to sell and install satellite television services under the trade name "Endeavor Communications," "Endeavor Holdings," and possibly other unknown trade names. The Moses Defendants' primary office at the time was in Pulaski County at 3204 Old Shackleford Road, Little Rock, Arkansas 72205. Endeavor Communications also had an office in Joplin, Missouri within the past three years.

18.    DirecTV is one of the largest satellite television services providers in the United States, providing satellite television services to more than 20 million domestic subscribers. Installation and repair of satellite dishes, receivers, and related equipment is an integral part of DirecTV's business.

19.    To provide installation and repair services to its massive client base, DirecTV directly employs, or contracts through third party businesses, installation and repair technicians. Plaintiffs were installation and repair technicians that exclusively serviced DirecTV customers in Arkansas and Missouri.

20.    Regardless of whether DirecTV directly hires the technicians or engages their services through a third-party business, DirecTV exerts the same level of control over the technicians, and those technicians are held to the same standards and expectations. To ensure all technicians are meeting DirecTV's minimum quality standards, DirecTV exercises significant control over the technicians' daily work lives, including but not limited to, control over what work the technicians performed, where that work was performed, when that work was performed, and how that work was performed.

21.    Plaintiffs interviewed with David Moses and other members of the Moses Defendants' management team before being hired.

22.    After being hired, Plaintiffs spent approximately two weeks in training learning the Moses Defendants' and DirecTV's standards and expectations for satellite installation and repair. Despite spending weeks learning how to perform the job to DirecTV's standards, they were not paid for that time.

23.     Each day, the Moses Defendants would assign Plaintiffs and the other technicians to specific jobs where they would service DirecTV customers. Plaintiffs and the other technicians were required to log into DirecTV's work order application, FSTP (Field Services Tech Passport), on their mobile phone to sign into DirecTV's system and access the work orders for that day.

24.     Plaintiffs and the other technicians were required to log in to check the work orders by 7:00 a.m. each morning.

25.     Plaintiffs and the other technicians were required to be at the first job site at 8:00 a.m. and they were required to work until they completed the last of their assigned jobs. Once Plaintiffs and the other technicians completed their assigned jobs, they were required to call the Moses Defendants' offices to check in so they could be reassigned to help other technicians still in the field.

26.     Defendants directed Plaintiffs and the other technicians about the order in which they needed to perform the assigned jobs. Technicians were not permitted to turn down jobs, and would be disciplined if they tried to turn down a job.

27.     At all stages of the installation process, Plaintiffs and the other technicians were required to hold themselves out as DirecTV representatives. While working, the technicians were required to wear a DirecTV uniform, and many technicians were required to place signage on their vehicle advertising that they were with DirecTV.

28.     Likewise, Plaintiffs and the other technicians were trained to introduce themselves as representatives of DirecTV when they first arrived at their assigned jobs

and show the customer a DirecTV lanyard identifying the technician as a DirecTV employee.

29.    Plaintiffs and the other technicians were required to contact DirecTV's support offices during the installation to complete the process, and informed the customers that if they experienced problems with their satellite services to contact DirecTV to resolve the problem.

30.    Plaintiffs and the other technicians were required to work long hours, six days per week. Plaintiffs and other technicians routinely worked between 60 and 70 hours per week, and sometimes more.

31.    DirecTV and the Moses Defendants mandated that the technicians use certain DirecTV approved parts and equipment. The items Plaintiffs and the other technicians had to buy were required to be purchased from Perfect 10 – a distributor of satellite products and equipment, and an affiliate of DirecTV.

32.    In addition, Plaintiffs and other technicians were required to purchase their own fuel, and they did not receive any reimbursement for those expenses.

33.    Despite routinely working over 40 hours per week, Plaintiffs and the other technicians were not paid an hourly rate. Instead, the technicians were paid on a per job basis for some of the jobs they performed. Oftentimes, however, Plaintiffs and the other technicians were never paid for the services they provided, and the Moses Defendants simply retained the money due to Plaintiffs.

34.    DirecTV also determined whether Plaintiffs' and the other technicians' work merited compensation, including setting the rate of pay to the Moses Defendants

for the technicians' work. The rate DirecTV and the Moses Defendants paid for each job was set by Defendants. The rate varied based on the job, and Plaintiffs and the other technicians could not set or adjust the rate.

35.     To ensure its technicians were providing services that met the Company's minimum quality standards, DirecTV monitored the installations for both its direct employees and those hired through a third-party business in the same manner.

36.     For example, DirecTV's Site Managers oversaw groups of Quality Control Technicians that reviewed the work performed by the other technicians doing the actual installation and repair work. The Site Managers and Quality Control Technicians oversaw a geographic region, including Arkansas and Missouri, and were responsible for ensuring the quality of the work performed by Plaintiffs and the other technicians.

37.     DirecTV exercised the same standards and job expectations over all its technicians, including its direct employees and those, like Plaintiffs, who were hired through a third-party business.

38.     Plaintiffs and the other technicians were required to satisfy DirecTV's success metrics, which included a scale measuring efficiency rates and other quality metrics.

39.     If the technician did not satisfy the quality metrics, or if a customer experienced a problem with their installation services within 90 days, the technicians would be "charged back" the amount of money they were to earn from the job. As a result, if DirecTV's quality control inspections or a customer complaint revealed a defect in the performance, the technician would lose their pay for that job.

40.   In addition to the "charge backs" initiated by DirecTV, the Moses Defendants would regularly initiate fraudulent charge backs to steal money from Plaintiffs and the other technicians. For example, on a nearly weekly basis, the Moses Defendants would fabricate charge backs as an excuse to withhold hundreds of dollars from different technicians pay checks, or would duplicate charge backs that had previously been charged in prior pay periods. For example, if DirecTV charged back $25.00 because a customer experienced an installation problem, the Moses Defendants would charge the Plaintiffs and putative class members $50.00, or some other, higher amount than what DirecTV charged. The Moses Defendants' scheme costs Plaintiffs and the other technicians thousands of dollars each month.

41.   Moreover, initially the Moses Defendants implemented a 5-week holdback period in which the Company would retain a technician's pay for 5 weeks before the technician would be paid. Under this model, 5 weeks of a technician's pay would be held by the Company until the technician's employment ended. Within the relevant time period, the Moses Defendants changed to a 2-week holdback period, meaning 3-weeks' pay was no longer being held back by the Company. Rather than paying the employees the 3-weeks' pay, Moses kept all the money, pocketing thousands of dollars of Plaintiffs' and putative class members' money.

42.   Despite exercising extensive control over Plaintiffs and the other technicians work, DirecTV and the Moses Defendants classified Plaintiffs and the other technicians as independent contractors. Plaintiffs regularly worked over 40 hours per week but were not paid overtime. Moreover, because of charge backs and the Moses

Defendants' practice of fraudulently stealing their wages, Plaintiffs were also paid less than the minimum wage for all their hours worked.

### IV. COLLECTIVE ACTION ALLEGATIONS

43.     Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

44.     Plaintiffs bring their FLSA collective action claims on behalf of themselves and all others similarly situated pursuant to 29 U.S.C. §§ 207 and 216(b), specifically, as follows:

> All satellite installation technicians who installed DirecTV services for the Moses Defendants within the past three years.

45.     Plaintiffs reserve the right to modify or amend the proposed class definition subject to additional information gained through further investigation and discovery.

46.     There are numerous similarly situated satellite installation technicians who worked for the Moses Defendants who would benefit from the issuance of Court-supervised notice of the instant lawsuit and the opportunity to join in the present lawsuit. Similarly situated employees are known to Defendants and readily identifiable through payroll records Defendants are required to keep by law. Ark. Code Ann. § 11-4-217; 29 U.S.C. § 211(c).

47.     There are questions of law and fact common to Plaintiffs and others similarly situated, which predominate over any questions affecting individual members only. These factual and legal questions include:

a.      Which individuals and entities are considered "employers" of Plaintiffs and putative class members under the FLSA;

b.      Whether Plaintiffs or putative class members are bona fide independent contractors;

c.      Whether Defendants satisfied their obligation to pay Plaintiffs and others similarly situated the minimum wage and overtime payments required by the FLSA;

d.      Whether Defendants' actions were willful;

e.      Whether Defendants complied with their recordkeeping obligations under the FLSA;

f.      Whether Plaintiffs and putative class members are entitled to liquidated damages;

g.      Whether Plaintiffs and putative class members are entitled to attorneys' fees, costs, and expenses.

48.     Defendants acted and refused to act on grounds generally applicable to Plaintiffs and others similarly situated.

49.     Plaintiffs' claims are typical of the claims of the FLSA Class in that Plaintiffs and others similarly situated were denied overtime and minimum wage because of Defendants' policies and practice. This is the predominant issue that pertains to the claims of Plaintiffs and the members of the FLSA class.

50.     Plaintiffs' FLSA damages, and those of all putative collective action members, should be able to be calculated mechanically based on records Defendants are

required to keep. 29 C.F.R. § 513.28. If Defendants failed to keep records as required by law, Plaintiffs and class members will be entitled to damages based on the best available evidence, even if it is only estimates. *See Anderson v. Mt. Clemens*, 328 U.S. 680, 687 (1946). Defendants cannot benefit from their failure, if any, to maintain records required by law.

51.     The collective action mechanism is superior to other available methods for a fair and efficient adjudication of the controversy.

52.     Plaintiffs will fairly and adequately protect the interests of the FLSA Class, as their interests are in complete alignment with others similarly situated, i.e., to prove and then eradicate Defendants' illegal misclassification of satellite installation technicians as independent contractors and to recover wages lost because of Defendants' misconduct.

53.     Plaintiffs' counsel is experienced with class/collective litigation, has previously served as class counsel in FLSA litigation, and will adequately protect the interests of Plaintiffs and others similarly situated.

54.     Plaintiffs and the proposed FLSA Class they seek to represent have suffered, and will continue to suffer, irreparable damage from the illegal policy, practice, and custom regarding Defendants' pay practices.

55.     Defendants have engaged in a continuing violation of the FLSA.

56.     Plaintiffs and all other similarly-situated servers were denied overtime and minimum wage because of Defendants' illegal practices. These violations were intended by Defendants and were willfully done.

## V. CLASS ACTION ALLEGATIONS – AMWA CLASS

57.     Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

58.     Plaintiffs bring this action for violation of the AMWA as a class action under Rule 23 of the *Federal Rules of Civil Procedure*. Specifically, Plaintiffs seek to represent a class of:

> All satellite installation technicians who worked for the Moses Defendants within the past three years at its offices in Arkansas.

59.     Plaintiffs reserve the right to modify or amend the proposed class definition subject to additional information gained through further investigation and discovery.

60.     Members of the putative class are so numerous that joinder of all such members is impracticable. The exact size of the class is unknown, but it is believed to exceed 100 individuals. Defendants should have records of the names and addresses of the putative class members, as they are required by law to keep such records. Ark. Code Ann. § 11-4-217; 29 U.S.C. § 211(c).

61.     There are common questions of law and fact applicable to the putative class with respect to liability, relief, and anticipated affirmative defenses, which predominate over any questions affecting individual members only. These factual and legal questions include:

> a.     Which individuals and entities are considered "employers" of Plaintiffs and putative class members under the AMWA;

b.    Whether Plaintiffs or putative class members are bona fide independent contractors;

c.    Whether Defendants satisfied their obligation to pay Plaintiffs and others similarly situated the minimum wage and overtime payments required by the AMWA;

d.    Whether Defendants' actions were willful;

e.    Whether Defendants complied with their recordkeeping obligations under the AMWA;

f.    Whether Plaintiffs and putative class members are entitled to liquidated damages;

g.    Whether Plaintiffs and putative class members are entitled to attorneys' fees, costs, and expenses.

62.    Defendants acted and refused to act on grounds generally applicable to Plaintiffs and others similarly situated.

63.    Plaintiffs' claims are typical of the putative class. Like all other putative class members, Plaintiffs were subject to Defendants' common practice of not paying minimum wage or overtime to which the employees were entitled under Arkansas law. This is the predominant issue that pertains to the claims of Plaintiffs and the members of the AMWA class.

64.    Plaintiffs will fairly and adequately protect the interest of the putative class. They have no conflicts with putative class members and have suffered the same injury as members of the putative class. Plaintiffs' counsel possesses the requisite resources and

experience in class action litigation to adequately represent Plaintiffs and putative class members in prosecuting the claims here.

65.     The questions of law and fact common to Plaintiffs and members of the putative class predominate over any question affecting only individual class members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## VI. Class Action Allegations – MMWL Class

66.     Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

67.     Plaintiffs bring this action for violation of the MMWL as a class action under Rule 23 of the *Federal Rules of Civil Procedure*. Specifically, Plaintiffs seek to represent a class of:

> All satellite installation technicians who worked for the Moses Defendants within the past three years at its offices in Missouri.

68.     Plaintiffs reserve the right to modify or amend the proposed class definition subject to additional information gained through further investigation and discovery.

69.     Members of the putative class are so numerous that joinder of all such members is impracticable. The exact size of the class is unknown, but it is believed to exceed 100 individuals. Defendants should have records of the names and addresses of the putative class members, as they are required by law to keep such records. Mo. Rev. Stat. § 290.520; 29 U.S.C. § 211(c).

70.     There are common questions of law and fact applicable to the putative class with respect to liability, relief, and anticipated affirmative defenses, which predominate over any questions affecting individual members only. These factual and legal questions include:

a.     Which individuals and entities are considered "employers" of Plaintiffs and putative class members under the MMWL;

b.     Whether Plaintiffs or putative class members are bona fide independent contractors;

c.     Whether Defendants satisfied their obligation to pay Plaintiffs and others similarly situated the minimum wage and overtime payments required by the MMWL;

d.     Whether Defendants' actions were willful;

e.     Whether Defendants complied with their recordkeeping obligations under the MMWL;

f.     Whether Plaintiffs and putative class members are entitled to liquidated damages;

g.     Whether Plaintiffs and putative class members are entitled to attorneys' fees, costs, and expenses.

71.     Defendants acted and refused to act on grounds generally applicable to Plaintiffs and others similarly situated.

72.     Plaintiffs' claims are typical of the putative class. Like all other putative class members, Plaintiffs were subject to Defendants' common practice of not paying

minimum wage or overtime to which the employees were entitled under Missouri law. This is the predominant issue that pertains to the claims of Plaintiffs and the members of the MMWL class.

73.     Plaintiffs will fairly and adequately protect the interest of the putative class. They have no conflicts with putative class members and have suffered the same injury as members of the putative class. Plaintiffs' counsel possesses the requisite resources and experience in class action litigation to adequately represent Plaintiffs and putative class members in prosecuting the claims here.

74.     The questions of law and fact common to Plaintiffs and members of the putative class predominate over any question affecting only individual class members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

### VII. CLAIM I:
### FLSA: FAILURE TO PAY MINIMUM WAGE
### (PLAINTIFFS INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED)

75.     Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

76.     At all relevant times, Plaintiffs and others similarly situated have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq.*

77.     At all relevant times, DirecTV has been, and continues to be, an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203. At all relevant times, DirecTV has

Page **19** of 37

employed and/or continues to employ "employee[s]," including Plaintiffs and each of the prospective FLSA Collective Action Plaintiffs, who have been and/or continue to be engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203. At all relevant times, DirecTV has had gross operating revenues exceeding $500,000.00.

78.    At all relevant times, David Moses, both individually and as the sole proprietor and/or member of the Moses Defendants have been, and continue to be, an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203. At all relevant times, the Moses Defendants have employed and/or continue to employ "employee[s]," including Plaintiffs and each of the prospective FLSA Collective Action Plaintiffs, who have been and/or continue to be engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203. At all relevant times, the Moses Defendants have had gross operating revenues exceeding $500,000.00.

79.    At all relevant times, Defendants jointly controlled and directed the work of Plaintiffs and the putative class members. As a result, Defendants are joint employers of Plaintiffs and putative class members and Defendants are each directly liable for the violations of the FLSA.

80.    The FLSA requires Defendants, as covered employers, to compensate all non-exempt employees for all hours worked at a rate not less than the minimum wage set forth in 29 U.S.C. § 206. The minimum wage applicable to Plaintiffs and others similarly situated is $7.25 per hour.

81.     Plaintiffs and others similarly situated are entitled to compensation for all hours worked at a rate not less than those set out above.

82.     At all relevant times, Defendants, pursuant to their policies and practices, failed and refused to compensate Plaintiff and others similarly situated for work performed at the minimum wage required by the FLSA.

83.     Defendants violated and continue to violate the FLSA, 29 U.S.C. § 201 *et seq.*, including 29 U.S.C. § 206(a)(1), by failing to pay Plaintiffs and others similarly situated for all hours worked at the minimum wage rates prescribed therein. These violations of the FLSA were knowing and willful within the meaning of 29 U.S.C. § 201 *et seq.*

84.     Defendants have neither acted in good faith nor with reasonable grounds to believe their actions and omissions were not a violation of the FLSA.  As a result, Plaintiffs and other similarly-situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described by Section 16(b) of the FLSA, codified at 29 U.S.C. § 215(b). Alternatively, should the Court find Defendants acted in good faith in failing to pay its employees minimum wage, Plaintiffs and all similarly-situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

85.     Because of Defendants' violations of law, Plaintiffs and others similarly situated are entitled to recover from Defendants attorneys' fees, litigation expenses, and court costs, pursuant to 29 U.S.C. § 216(b), and such other legal and equitable relief as the Court deems just and proper.

## VIII. CLAIM II:
### FLSA: FAILURE TO PAY OVERTIME
#### (PLAINTIFFS INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED)

86.    Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

87.    Section 207(a)(1) of the FLSA, 29 U.S.C. § 207(a)(1), requires employers to pay non-exempt employees one and one-half times their regular rate of pay for all time worked over forty hours per workweek.

88.    Plaintiffs and those similarly situated were not exempt from the overtime provisions of the FLSA.

89.    Plaintiffs and those similarly-situated employees regularly worked in excess of forty hours per workweek without overtime compensation from Defendants.

90.    Defendants violated and continue to violate the FLSA, 29 U.S.C. § 201 *et seq.*, including 29 U.S.C. § 207(a)(1) by failing to pay FLSA Collective Action Plaintiffs overtime compensation for all hours worked in excess of forty each week.

91.    When calculating Plaintiffs' and the putative class members' regular rate of pay, all allowable remuneration, including all chargebacks and the monies stolen by David Moses, must be included in the calculation.

92.    Defendants knew or should have known that Plaintiffs and others similarly situated were entitled to overtime pay and knowingly and willfully violated the FLSA by failing to pay Plaintiffs and others similarly situated overtime compensation, therefore these violations of the FLSA were knowing and willful within the meaning of 29 U.S.C. § 201 *et seq.*

93.    Defendants have neither acted in good faith nor with reasonable grounds to believe their actions and omissions were not a violation of the FLSA.  As a result, Plaintiffs and other similarly-situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described by Section 16(b) of the FLSA, codified at 29 U.S.C. § 215(b).  Alternatively, should the Court find Defendants acted in good faith in failing to pay its employees their overtime wages, Plaintiffs and all similarly-situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

94.    Because of Defendants' violations of law, FLSA Collective Action Plaintiffs are entitled to recover from Defendant attorneys' fees, litigation expenses and court costs, pursuant to 29 U.S.C. § 216(b), and such other legal and equitable relief as the Court deems just and proper.

### IX. CLAIM III:
### AMWA: FAILURE TO PAY MINIMUM WAGE
### (PLAINTIFFS INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED)

95.    Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

96.    At all relevant times, Plaintiffs and putative class members were "employees" as that term is defined by the Arkansas Minimum Wage Act. Ark. Code Ann. § 11-4-203(3).

97.    At all relevant times, David Moses, both individually and as the sole proprietor and/or member of the Moses Defendants, was Plaintiffs' and putative class members' "employer" as defined by Ark. Code Ann. § 11-4-203(4). Moses and his

business interests had 4 or more employees, and it suffered and permitted Plaintiffs and putative class members to work as satellite installation technicians for his business enterprises. Plaintiffs and putative class members were economically dependent on the Moses Defendants, who controlled and supervised their work and employment conditions. As a result, the Moses Defendants are jointly and severally liable for Arkansas Minimum Wage Act violations committed against Plaintiffs and putative class members.

98.    At all relevant times, DirecTV, LLC was also Plaintiffs' and putative class members' "employer" as defined by Ark. Code Ann. § 11-4-203(4). DirecTV, LLC had 4 or more employees, and it suffered and permitted Plaintiffs and putative class members to work as satellite installation technicians for its business enterprise. Plaintiffs and putative class members were economically dependent on DirecTV, LLC, who controlled and supervised their work and employment conditions. As a result, DirecTV, LLC is jointly and severally liable for Arkansas Minimum Wage Act violations committed against Plaintiffs and putative class members.

99.    Ark. Code Ann. § 11-4-210(a) provides that "beginning October 1, 2006, every employer shall pay each of his or her employees wages at the rate of not less than six dollars and twenty-five cents ($6.25) per hour except as otherwise provided in this subchapter. Beginning January 1, 2015, every employer shall pay his or her employees wages at the rate of not less than seven dollars and fifty cents ($7.50) per hour, beginning January 1, 2016, the rate of not less than eight dollars ($8.00) per hour, and beginning January 1, 2017, the rate of not less than eight dollars and fifty cents ($8.50) per hour, except as otherwise provided in this subchapter." Ark. Code Ann. § 11-4-210(a)(1)-(2).

Page **24** of 37

100.    At all relevant times, Defendants, failed and refused to compensate Plaintiffs and putative class members for work performed at the rates required by Ark. Code Ann. § 11-4-210. Although Plaintiffs and putative class members worked for Defendants installing and repairing satellite services, they were not paid at least the minimum wage and were not paid overtime when working more than 40 hours per week. Plaintiffs and putative class members did not fit under any exemption to the Arkansas Minimum Wage Act's minimum wage and maximum hours provisions, and it is Defendants' burden to prove any such claimed exemptions.

101.    Plaintiffs and putative class members are entitled to minimum wage for working for Defendants installing and repairing satellite services.

102.    Upon information and belief, Defendants failed to make, keep, and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions and practices of employment, in violation of Ark. Code Ann. § 11-4-217. As a result, Plaintiffs and putative class members are entitled to damages based on a just and reasonable inference of the unpaid hours worked. *Marine Servs. Unlimited v. Rakes*, 323 Ark. 757, 767, 918 S.W.2d 132, 137 (1996) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688 (1946)).

103.    Defendants' violations entitle Plaintiffs and putative class members to liquidated damages pursuant to Ark. Code Ann. § 11-4-218(a)(2) in an amount equal to their unpaid overtime wages.

104.    Plaintiffs and putative class members are entitled to an award of attorneys' fees, costs, and expenses in bringing their Arkansas Minimum Wage Act claims pursuant to Ark. Code Ann. § 11-4-218(a)(1)(B)(ii).

## X. CLAIM IV:
### AMWA: FAILURE TO PAY OVERTIME
### (PLAINTIFFS INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED)

105.    Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

106.    At all relevant times, Plaintiffs and putative class members were "employees" as that term is defined by the Arkansas Minimum Wage Act. Ark. Code Ann. § 11-4-203(3).

107.    At all relevant times, David Moses, both individually and as the sole proprietor and/or member of the Moses Defendants, was Plaintiffs' and putative class members' "employer" as defined by Ark. Code Ann. § 11-4-203(4). Moses and his business interests had 4 or more employees, and it suffered and permitted Plaintiffs and putative class members to work as satellite installation technicians for his business enterprises. Plaintiffs and putative class members were economically dependent on the Moses Defendants, who controlled and supervised their work and employment conditions. As a result, the Moses Defendants are jointly and severally liable for Arkansas Minimum Wage Act violations committed against Plaintiffs and putative class members.

108.    At all relevant times, DirecTV, LLC was also Plaintiffs' and putative class members' "employer" as defined by Ark. Code Ann. § 11-4-203(4). DirecTV, LLC had 4 or more employees, and it suffered and permitted Plaintiffs and putative class members

to work as satellite installation technicians for its business enterprise. Plaintiffs and putative class members were economically dependent on DirecTV, LLC, who controlled and supervised their work and employment conditions. As a result, DirecTV, LLC is jointly and severally liable for Arkansas Minimum Wage Act violations committed against Plaintiffs and putative class members.

109.    Ark. Code Ann. § 11-4-211(a) provides that "no employer shall employ any of his or her employees for a work week longer than forty (40) hours unless the employee receives compensation for his or her employment in excess of the hours above specified at a rate not less than one and one-half (1 ½) times the regular rate of pay at which he or she is employed."

110.    When calculating Plaintiffs' and the putative class members' regular rate of pay, all allowable remuneration, including all chargebacks and the monies stolen by David Moses, must be included in the calculation.

111.    At all relevant times, Defendants failed and refused to compensate Plaintiffs and the putative class members for work performed at the rate required by Ark. Code Ann. § 11-4-211. Although Plaintiffs and the putative class members worked more than 40 hours nearly every week, they were never paid overtime compensation. Plaintiffs and the putative class members did not fit under any exemption to the Arkansas Minimum Wage Act's minimum wage and maximum hours provisions, and it is Defendants' burden to prove any such claimed exemptions.

112.    Plaintiffs and the putative class members are entitled to overtime compensation for the time period where they worked as satellite installation technicians because they were required to work more than 40 hours per week.

113.    Upon information and belief, Defendants failed to make, keep, and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions and practices of employment, in violation of Ark. Code Ann. § 11-4-217. As a result, Plaintiffs and the putative class members are entitled to damages based on a just and reasonable inference of the unpaid hours worked. *Marine Servs. Unlimited v. Rakes*, 323 Ark. 757, 767, 918 S.W.2d 132, 137 (1996) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688 (1946)).

114.    Defendants' violations entitle Plaintiffs and the putative class members to liquidated damages pursuant to Ark. Code Ann. § 11-4-218(a)(2) in an amount equal to their unpaid overtime wages.

115.    Plaintiffs and the putative class members are entitled to an award of attorneys' fees, costs, and expenses in bringing their Arkansas Minimum Wage Act claims pursuant to Ark. Code Ann. § 11-4-218(a)(1)(B)(ii).

### XI. CLAIM V:
### MMWL: FAILURE TO PAY MINIMUM WAGE
### (PLAINTIFFS INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED)

116.    Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

117.    At all relevant times, Plaintiffs and putative class members were "employees" as that term is defined by the Missouri Minimum Wage Law. Mo. Rev. Stat. § 290.500(3).

118.    At all relevant times, David Moses, both individually and as the sole proprietor and/or member of the Moses Defendants, was Plaintiffs' and putative class members' "employer" as defined by Mo. Rev. Stat. § 290.500(4). Upon information and belief, Moses and his business interests had more than $500,000 in annual gross sales, and it suffered and permitted Plaintiffs and putative class members to work as satellite installation technicians for his business enterprises. Plaintiffs and putative class members were economically dependent on the Moses Defendants, who controlled and supervised their work and employment conditions. As a result, the Moses Defendants are jointly and severally liable for the Missouri Minimum Wage Law violations committed against Plaintiffs and putative class members.

119.    At all relevant times, DirecTV, LLC was also Plaintiffs' and putative class members' "employer" as defined by Mo. Rev. Stat. § 290.500(4). Upon information and belief, DirecTV, LLC had more than $500,000 in annual gross sales, and it suffered and permitted Plaintiffs and putative class members to work as satellite installation technicians for its business enterprise. Plaintiffs and putative class members were economically dependent on DirecTV, LLC, who controlled and supervised their work and employment conditions. As a result, DirecTV, LLC is jointly and severally liable for the Missouri Minimum Wage Law violations committed against Plaintiffs and putative class members.

120.    Mo. Rev. Stat. § 290.502 provides that, effective January 1, 2007, the minimum wage is $6.50 per hour, and the minimum wage shall be increased or decreased on the first day of the year by the increase or decrease in the cost of living. In 2013, the minimum wage was $7.35 per hour. In 2014, the minimum wage was $7.50 per hour. In 2015, the minimum wage was $7.65 per hour. In 2016, the minimum wage was $7.65 per hour. In 2017, the minimum wage is $7.70 per hour.

121.    At all relevant times, Defendants, failed and refused to compensate Plaintiffs and putative class members for work performed at the rates required by Mo. Rev. Stat. § 290.502. Although Plaintiffs and putative class members worked for Defendants installing and repairing satellite services, they were not paid at least the minimum wage and were not paid overtime when working more than 40 hours per week. Plaintiffs and putative class members did not fit under any exemption to the Missouri Minimum Wage Law's minimum wage and maximum hours provisions, and it is Defendants' burden to prove any such claimed exemptions.

122.    Plaintiffs and putative class members are entitled to minimum wage for working for Defendants installing and repairing satellite services.

123.    Upon information and belief, Defendants failed to make, keep, and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions and practices of employment, in violation of Mo. Rev. Stat. § 290.520. As a result, Plaintiffs and putative class members are entitled to damages based on a just and reasonable inference of the unpaid hours worked.

124.    Defendants' violations entitle Plaintiffs and putative class members to liquidated damages pursuant to Mo. Rev. Stat. § 290.527 in an amount equal to their unpaid overtime wages.

125.    Plaintiffs and putative class members are entitled to an award of attorneys' fees, costs, and expenses in bringing their Missouri Minimum Wage Law claims pursuant to Mo. Rev. Stat. § 290.527.

## XII. CLAIM VI:
### MMWL: FAILURE TO PAY OVERTIME
### (PLAINTIFFS INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED)

126.    Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

127.    At all relevant times, Plaintiffs and putative class members were "employees" as that term is defined by the Missouri Minimum Wage Law. Mo. Rev. Stat. § 290.500(3).

128.    At all relevant times, David Moses, both individually and as the sole proprietor and/or member of the Moses Defendants, was Plaintiffs' and putative class members' "employer" as defined by Mo. Rev. Stat. § 290.500(4). Upon information and belief, Moses and his business interests had more than $500,000 in annual gross sales, and it suffered and permitted Plaintiffs and putative class members to work as satellite installation technicians for his business enterprises. Plaintiffs and putative class members were economically dependent on the Moses Defendants, who controlled and supervised their work and employment conditions. As a result, the Moses Defendants are jointly and

severally liable for the Missouri Minimum Wage Law violations committed against Plaintiffs and putative class members.

129.    At all relevant times, DirecTV, LLC was also Plaintiffs' and putative class members' "employer" as defined by Mo. Rev. Stat. § 290.500(4). Upon information and belief, DirecTV, LLC had more than $500,000 in annual gross sales, and it suffered and permitted Plaintiffs and putative class members to work as satellite installation technicians for its business enterprise. Plaintiffs and putative class members were economically dependent on DirecTV, LLC, who controlled and supervised their work and employment conditions. As a result, DirecTV, LLC is jointly and severally liable for the Missouri Minimum Wage Law violations committed against Plaintiffs and putative class members.

130.    Mo. Rev. Stat. § 290.505 provides that "no employer shall employ any of his employees for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

131.    When calculating Plaintiffs' and the putative class members' regular rate of pay, all allowable remuneration, including all chargebacks and the monies stolen by David Moses, must be included in the calculation.

132.    At all relevant times, Defendants failed and refused to compensate Plaintiffs and the putative class members for work performed at the rate required by Mo. Rev. Stat. § 290.505. Although Plaintiffs and the putative class members worked more than 40 hours nearly every week, they were never paid overtime compensation. Plaintiffs

and the putative class members did not fit under any exemption to the Missouri Minimum Wage Law's minimum wage and maximum hours provisions, and it is Defendants' burden to prove any such claimed exemptions.

133.    Plaintiffs and the putative class members are entitled to overtime compensation for the time period where they worked as satellite installation technicians because they were required to work more than 40 hours per week.

134.    Upon information and belief, Defendants failed to make, keep, and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions and practices of employment, in violation of Mo. Rev. Stat. § 290.520. As a result, Plaintiffs and the putative class members are entitled to damages based on a just and reasonable inference of the unpaid hours worked.

135.    Defendants' violations entitle Plaintiffs and the putative class members to liquidated damages pursuant to Mo. Rev. Stat. § 290.527 in an amount equal to their unpaid overtime wages.

136.    Plaintiffs and the putative class members are entitled to an award of attorneys' fees, costs, and expenses in bringing their Missouri Minimum Wage Law claims pursuant to Mo. Rev. Stat. § 290.527.

### XIII. CLAIM VII:
### CONVERSION
### (PLAINTIFFS INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED AGAINST THE MOSES DEFENDANTS ONLY)

137.    Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

138.   Plaintiffs and the putative class members are entitled to payment of their wages owed. Plaintiffs performed services for the Moses Defendants and were entitled to compensation for those services.

139.   Instead of paying Plaintiffs and the putative class members for their labor, the Moses Defendants regularly stole money from them. The Moses Defendants would fraudulently assert charge backs against Plaintiffs and the putative class members. For example, if DirecTV charged back $25.00 because a customer experienced an installation problem, the Moses Defendants would charge the Plaintiffs and putative class members $50.00, or some other, higher amount than what DirecTV charged.

140.   Moreover, initially the Moses Defendants implemented a 5-week holdback period in which the Company would retain a technician's pay for 5 weeks before the technician would be paid. Under this model, 5 weeks of a technician's pay would be held by the Company until the technician's employment ended. Within the relevant time period, the Moses Defendants changed to a 2-week holdback period, meaning 3-weeks' pay was no longer being held back by the Company. Rather than paying the employees the 3-weeks' pay, Moses kept all of the money, pocketing thousands of dollars of Plaintiffs' and putative class members' money.

141.   As a result, the Moses Defendants intentionally took or exercised dominion or control over Plaintiffs' and the putative class members' property in violation of their rights.

142.   Plaintiffs and the putative class members regularly complained to David Moses and other management of the Moses Defendants about not receiving the pay to

which they were entitled. Their complaints were met with lies, delay, and empty promises.

143.    The Moses Defendants acted with malice or in reckless disregard of the consequences of retaining Plaintiffs' and the putative class members' wages.

144.    Plaintiffs and the putative class members are entitled to the wages wrongfully converted by the Moses Defendants, interest, and punitive damages.

## XIV. Prayer for Relief

WHEREFORE, Plaintiffs, on behalf of themselves and the classes of similarly-situated individuals they seek to represent, respectfully request this Court:

a.      Enter an order certifying Plaintiffs' claims brought under the Fair Labor Standards Act for treatment as a collective action;

b.      Enter an order certifying Plaintiffs' claims brought under the Arkansas Minimum Wage Act for treatment as a class action;

c.      Enter an order certifying Plaintiffs' claims brought under the Missouri Minimum Wage Law for treatment as a class action;

d.      Designate Plaintiffs as Class Representatives;

e.      Appoint Holleman & Associates, P.A. as class counsel;

f.      Enter a declaratory judgment that the practices complained of herein are unlawful under the Fair Labor Standards Act, Arkansas Minimum Wage Act, and Missouri Minimum Wage Law;

g.      Enter a permanent injunction restraining and preventing Defendants from withholding the compensation that is due to their employees, from retaliating against

any of them for taking part in this action, and from further violating their rights under the Fair Labor Standards Act, Arkansas Minimum Wage Act, and Missouri Minimum Wage Law;

h.    Enter an Order for complete and accurate accounting of all the compensation to which Plaintiffs and all other similarly-situated employees are entitled;

i.    Award Plaintiffs and all putative class members compensatory damages in an amount equal to the unpaid back wages at the applicable minimum wage and overtime rates from three (3) years prior to this lawsuit through the date of trial;

j.    Award Plaintiffs and all putative class members liquidated damages in an amount equal to their compensatory damages;

k.    Award Plaintiffs and all putative class members punitive damages;

l.    Award Plaintiffs and all putative class members all recoverable costs, expenses, and attorneys' fees incurred in prosecuting this action and all claims, together with all applicable interest; and

m.    Grant Plaintiffs and all putative class members all such further relief as the Court deems just and appropriate.

## XV. JURY DEMAND

Plaintiffs demand a jury trial on all issues so triable.

HOLLEMAN & ASSOCIATES, P.A.
1008 West Second Street
Little Rock, Arkansas 72201
Tel. 501.975.5040
Fax 501.975.5043


Respectfully Submitted,

John Holleman, ABN 91056
jholleman@johnholleman.net
Timothy A. Steadman, ABN 2009113
tim@johnholleman.net
Jerry Garner, ABN 2014134
jerry@johnholleman.net

## SKY CONNECT, ENDEAVOR COMMUNICATIONS, MOSES HOLDINGS, LLC, MOSES PROPERTIES, LLC, MOSES CAPITAL GROUP, LLC, and DAVID MOSES

### CONSENT TO JOIN COLLECTIVE ACTION

I consent to join the action as a Plaintiff against the above-referenced Defendants or any other individual or entity who may be liable as an employer under the Fair Labor Standards Act. If this case does not proceed collectively, I also consent to join any subsequent action to assert the same or similar claims. I consent to becoming a party Plaintiff to this lawsuit, to be represented by HOLLEMAN & ASSOCIATES, P.A. and to be bound by any settlement of this action or adjudication of the court.

Consented to on this ___9___ day of ___Oct._____, 2017

___DAVE   Pointer___
Print Name

_____
Signature

___10/9/17___
Date

**EXHIBIT**

**A**

**CLEAR SATELLITE, INC., SKY CONNECT, ENDEAVOR COMMUNICATIONS, MOSES HOLDINGS, LLC, MOSES PROPERTIES, LLC, MOSES CAPITAL GROUP, LLC, and DAVID MOSES**

---

### CONSENT TO JOIN COLLECTIVE ACTION

---

I consent to join the action as a Plaintiff against the above-referenced Defendants or any other individual or entity who may be liable as an employer under the Fair Labor Standards Act. If this case does not proceed collectively, I also consent to join any subsequent action to assert the same or similar claims. I consent to becoming a party Plaintiff to this lawsuit, to be represented by HOLLEMAN & ASSOCIATES, P.A. and to be bound by any settlement of this action or adjudication of the court.

Consented to on this _11st_ day of _October_, 2017

_Michael Mondy_
Print Name

_M. Mondy_
Signature

_10/16/17_
Date

**EXHIBIT**

**B**

**SKY CONNECT, ENDEAVOR COMMUNICATIONS, DAVID MOSES, MOSES HOLDINGS, LLC, MOSES PROPERTIES, LLC and MOSES CAPITAL GROUP, LLC**

## CONSENT TO JOIN COLLECTIVE ACTION

I consent to join the action as a Plaintiff against the above-referenced Defendants or any other individual or entity who may be liable as an employer under the Fair Labor Standards Act. If this case does not proceed collectively, I also consent to join any subsequent action to assert the same or similar claims. I consent to becoming a party Plaintiff to this lawsuit, to be represented by HOLLEMAN & ASSOCIATES, P.A. and to be bound by any settlement of this action or adjudication of the court.

Consented to on this __13th__ day of __November__, 2017

__Michael Hall__
Print Name

__Michael Hall__
Signature

__11/13/17__
Date

```
EXHIBIT
   C
```