IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | |
|---|---|
| DAVID POINTER, MICHAEL MONDAY, and MICHAEL HALL, individually and on behalf of all others similarly situated | PLAINTIFFS |
| v.   CASE NO. 4:17-cv-00772 | |
| DIRECTV, LLC and DAVID MOSES d/b/a ENDEAVOR COMMUNICATIONS | DEFENDANTS |

**PLAINTIFFS' UNOPPOSED MOTION FOR ORDER GRANTING PRELIMINARY APPROVAL OF SETTLEMENT, CONDITIONALLY CERTIFYING A SETTLEMENT CLASS, AND AUTHORIZING THE ISSUANCE OF NOTICE OF SETTLEMENT TO ABSENT CLASS MEMBERS**

Plaintiffs hereby submit their unopposed request that the Court preliminarily approve the parties' settlement as set forth in their agreement, conditionally certify a Rule 23 class for purposes of settlement, authorize the issuance of notice to that settlement class, and schedule a hearing in which to consider any objections, finally approve the settlement, and dismiss this action with prejudice.

1.     Plaintiffs and Defendant DIRECTV, LLC have reached a tentative agreement, subject to the approval of the Court, to settle a heavily contested action. The parties' agreement resolves all Plaintiffs' and Class Members' FLSA and/or state law collective and class claims against DIRECTV. Further, as noted in the parties' joint status report (Doc. 89), Plaintiffs have agreed to voluntarily dismiss their claims against Defendant David Moses without prejudice upon preliminary approval of the settlement.

## I. LITIGATION BACKGROUND

2. Plaintiffs filed this class- and collective-action lawsuit on November 21, 2017, bringing claims under the Fair Labor Standards act ("FLSA"), Arkansas Minimum Wage Act ("AMWA"), and the Missouri Minimum Wage Law ("MMWL"). Plaintiffs installed DIRECTV satellite equipment for David Moses d/b/a Endeavor Communications. Plaintiffs allege that they were misclassified as independent contractors and not paid minimum wage and overtime compensation. (Doc. 1). Plaintiffs also alleged that DIRECTV and Moses were joint employers and are jointly and severally liable for minimum wage and overtime payments. Plaintiffs further alleged that Moses converted property belonging to them. Defendants denied Plaintiff's allegations, and among other things, asserted that the satellite installation technicians working for Mr. Moses were not employees of DIRECTV. (Docs. 17 & 18).

3. On June 12, 2018, Moses filed a voluntary petition for Bankruptcy in the United States Bankruptcy Court for the Eastern District of Arkansas. (Doc. 33). As a result, a stay of the proceedings was automatically given effect until the Bankruptcy Court granted relief from the stay.

4. On June 13, 2018, DIRECTV submitted its brief requesting that this litigation be stayed as to it until Moses' bankruptcy proceedings were resolved. (Doc. 39). DIRECTV also filed a Complaint seeking declaratory and injunctive relief in the Bankruptcy Court . On June 29, 2018, Plaintiffs filed a brief opposing a stay of the proceedings and requesting the stay be lifted. (Doc. 36).

5. On July 25, 2018, the Bankruptcy Court granted Plaintiffs' motion for relief from the automatic stay and the present litigation could proceed. Moses' bankruptcy was eventually dismissed.

6. On August 16, 2018, Plaintiffs moved for conditional certification and court-authorized notice, seeking conditional certification of all satellite installation technicians who installed DIRECTV services for the Moses Defendants within the past three years. (Docs. 47 & 48). DIRECTV opposed conditional certification, asserting, among other things, that Plaintiffs had not presented evidence tying DIRECTV to the classification decisions and pay practices they challenged, or, for that matter, to any common policy that could support a collective finding against DIRECTV. (Doc. 58). In their reply, Plaintiffs reiterated their allegation that DIRECTV and Moses were joint employers, and the most efficient method to resolve this common question was collectively through a collective action. (Doc. 64). On October 18, 2018, the Court granted Plaintiffs' motion for conditional certification. (Doc. 68).

7. Plaintiffs and DIRECTV engaged in extensive discovery. DIRECTV produced nearly 40,000 pages of documents, not including electronically stored information, such as SIEBEL data, which included thousands of data points. Plaintiffs produced over 10,000 pages, not including electronically stored information. Discovery was complicated by Moses' claim that he did not have the records relating to his business. Plaintiffs served numerous third-party subpoenas to obtain Moses' business records, including obtaining a flash drive from Eichenbaum Liles P.A., who previously represented Moses in a dispute with his employees. Nine lengthy depositions were taken:

David Moses and two of Endeavor's managers, Allen Cuples and Chelsea Burleson, were deposed. DIRECTV deposed five of the Plaintiffs: David Pointer, Michael Monday, Michael Hall, Joey Schoggin, and Noah Peabody. Plaintiffs deposed Chad Eldredge, both individually and as a 30(b)(6) representative of DIRECTV.

8. The merits of Plaintiffs' misclassification and joint employer theories were hotly disputed throughout the litigation. Throughout the case, DIRECTV contended—and still contends—among other things, that Plaintiffs were properly classified as independent contractors, that if they were not properly classified Moses solely employed the Plaintiffs, and that DIRECTV was merely a customer of Moses and is not liable to Plaintiffs in any form or fashion.

9. On January 19, 2019, the Parties submitted a request for a 45-day extension to the motions deadline to explore settlement possibilities. (*See* Doc 81.) The Court graciously extended the deadline to May 3, 2019. (*See* Doc. 82.) After extensive rounds of negotiations between the Parties, a settlement was reached which Plaintiffs' counsel believes will fairly compensate the Plaintiffs and Class Members for any unpaid wages and overtime, while avoiding costly and protracted litigation with an uncertain resolution. The parties' settlement agreement is attached to this motion as Exhibit A.

## II. THE FLSA SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

10. "Before approving an FLSA settlement, the Court must ensure that the parties are not negotiating around the FLSA's requirements and that the settlement represents a fair and reasonable resolution of a bona fide dispute." *Younger v. Ctrs. For Youth & Families, Inc.*, No. 4:16-cv-00170-KGB, 2017 U.S. Dist. LEXIS 65049, 2017 WL

1652561, at *1 (E.D. Ark. Apr. 27, 2017). In its Order granting conditional certification, this Court outlined many of the bona fide disputes that exist. There are bona fide disputes regarding whether Plaintiffs were independent contractors, how many hours they worked, how much they made, and whether DIRECTV can be liable as a joint employer, among others. (*See* Doc. 68 at *2-3.)

11. Plaintiffs have secured what they believe to be a favorable settlement resolving their claims against DIRECTV. The proposed settlement was the result of arms'-length negotiations based upon the contested nature of the case, and Plaintiffs submit the settlement reflects a reasonable compromise over all contested issues. Based on the contested nature of the litigation, the quality of the settlement, and the results obtained for Plaintiffs and Class Members, the Court should approve it.

12. The settlement represents a fair and reasonable resolution of the claims in the case. Plaintiffs' counsel believes that each Plaintiff would receive an amount similar to what they would likely receive if the matter were tried to a successful conclusion. Damage calculations are challenging in this case. Plaintiffs testified that their hours of work varied from day to day and week to week and, in most instances, could not recall the time worked on any particular week or day. Moreover, Moses did not have any records showing the amounts paid to his employees, and Plaintiffs were unable to find such records in the information obtained through subpoenas.

13. To calculate damages, Plaintiffs primarily used data from DIRECTV's work order management system, which tracks various information relating to DIRECTV satellite installation and repair work orders. For Plaintiffs with data available, their hours

worked were estimated based on the time between the first timestamp and the last timestamp each day.[1] For days where there was no timestamp at the end of the day, Plaintiffs capped their daily hours at 9 hours. To determine the amount each Plaintiff was paid, the calculations assumed that Moses paid the technicians 75% of what Moses received from DIRECTV for a given work order, which is consistent with information obtained in discovery. The damage calculation covers the three-year period from the date each Plaintiff filed his or her consent, and the amount was doubled for liquidated damages. Further, every named and opt-in Plaintiff will receive a minimum of $2,000.00, regardless of the damages calculation.

14. Plaintiffs' counsel believes that the amounts to be paid to Plaintiffs and opt-in plaintiffs represents an outstanding recovery, and, at the very least, is "a fair and reasonable resolution of a bona fide dispute." *Younger*, 2017 WL 1652561, at *1. This is particularly true here because the lack of available time and payroll data would have made it extremely difficult to present, much less prove, Plaintiffs' damages to a jury.

15. The attorneys' fees provided under the settlement agreement are also reasonable and represent a fair compromise between the parties. Plaintiffs' counsel agreed to represent Plaintiffs in this action on a contingency basis, with Plaintiffs' counsel paying all out-of-pocket costs and expenses out of the recovery, meaning that if there is

---

[1] Plaintiffs acknowledge that DIRECTV disputes that the timestamps appearing in its work order management system provide accurate evidence of hours worked or the identity of the individual performing the work order and believes that the record in this case establishes the unreliability of such data for these purposes. DIRECTV does not, however, oppose Plaintiffs' use of data from DIRECTV's work order management system solely for purposes of settlement.

no recovery (either because of a loss or an insolvent defendant) Plaintiffs will pay nothing and Plaintiffs' counsel would not receive reimbursement for the money spent to front costs and expenses. In this case, Plaintiffs' counsel will receive the portion allocated in the Settlement Agreement as attorneys' fees, costs, and expenses as their sole compensation for the work done on this case, and their sole reimbursement for out-of-pocket expenses.

16. The case required a significant amount of work, and Plaintiffs' counsel submits that counsel recorded approximately 1,300 hours spent on the case. Plaintiffs' counsel spent a significant amount of time during discovery, including preparing for and taking depositions, preparing written discovery responses for the named Plaintiffs, and propounding extensive discovery to Defendants, as well as efforts to obtain documents from pro se Defendant Moses and several third parties.

17. Plaintiffs' counsel also spent a significant amount of time reviewing, analyzing, and summarizing thousands of pages of documents and voluminous electronic records to identify Plaintiffs' hours worked and determine whether they were paid below the minimum wage. This work allowed Plaintiffs' counsel to calculate Plaintiffs' alleged damages and asses their potential recovery at trial. Through this work, Plaintiffs' counsel tenaciously represented Plaintiffs and secured a favorable settlement on their behalf.

18. The significant amount of work required to secure such a favorable settlement resulted in Plaintiffs' counsel incurring significant fees, costs, and expenses, which are also being resolved in the settlement agreement. Under the terms of the

settlement agreement, Plaintiffs' counsel will receive $256,594.86 as attorneys' fees, costs, and expenses as their sole compensation, an amount which is far less than they would seek on a contested fee petition and far less than they have actually billed in the case. As permitted by the Court (Doc. 84), Plaintiffs are filing their billing records under seal.

19. As indicated above, Plaintiffs' counsel has spent approximately 1,300 hours to date on this action. Plaintiffs' counsel asserts that their attorneys' fees are over $300,000.00, when using rates of $275.00 for John Holleman, $225.00 for Tim Steadman, $225.00 for Jerry Garner, and $100.00 for paralegals, law clerks, and support staff, which are the rates which have been awarded to the firm previously.[2] *See Ginnaven v. Alabama Arkansas Wildlife LLC*, 2015 U.S. Dist. LEXIS 150355 (E.D. Ark. Nov. 5, 2015).

20. The settlement pays Plaintiffs as much, if not more in many instances, than they could have received if the matter had been tried, without any reduction for attorneys' fees, costs, and expenses. Moreover, the amount allocated in the settlement for attorneys' fees, costs, and expenses is reasonable because of the work that this case required to bring it to a successful conclusion, and the outstanding result achieved for the Plaintiffs.

---

[2] Plaintiffs' counsel contends that the reasonable hourly rate for FLSA work in the Eastern District of Arkansas is higher today than 4 years ago, but to avoid any unnecessary dispute, they have chosen to use the rates they were awarded in *Ginnaven*. Plaintiffs' counsel further acknowledges that DIRECTV's non-opposition to their fee request, consistent with the Parties' settlement agreement, does not constitute agreement as to the reasonableness of the request or the arguments presented in favor of that request.

### III. THE COURT SHOULD CONDITIONALLY CERTIFY A SETTLEMENT CLASS, AUTHORIZE ISSUANCE OF NOTICE TO CLASS MEMBERS, AND SCHEDULE A FAIRNESS HEARING IN WHICH TO HEAR AND RULE ON OBJECTIONS AND FINALLY APPROVE THE SETTLEMENT

21. The parties have also agreed to offer settlement payments to 40 putative Class Members who performed DIRECTV work orders for Moses in Missouri or Arkansas, and for whom DIRECTV has an address, but who did not previously opt into this case following conditional certification. Consistent with Rule 23(e) of *the Federal Rules of Civil Procedure*, Plaintiffs request that the Court conditionally certify a class for purposes of settlement, authorize the issuance of notice to these putative Class Members, and schedule a hearing to determine whether the settlement is fair, reasonable and adequate.

22. Under Rule 23(e), the Court must first authorize notice to the class upon a showing that the Court will likely be able to approve the proposed settlement and certify the class for purposes of judgment on the proposal. Here, the parties have agreed to certify a class of 40 individuals who were engaged as independent contractors by David Moses or Endeavor Communications, worked in a non-management capacity, closed a DIRECTV work order in Arkansas or Missouri after October 31, 2015, and for whom the parties have a mailing address. The 40 individuals are identified by name in the parties' settlement agreement.

23. The Court will be able to approve the proposed settlement and certify the class. Under Rule 23(e)(2), a settlement should be approved if Court finds that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and

class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided to the class is adequate, taking into account (i) the costs, risks, and delay of the trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to one another. Many of these factors were discussed above in relation to approval of the FLSA settlement.

24. Regardless, the settlement is fair, reasonable, and adequate to the class members. Plaintiffs' counsel and the proposed class representatives have adequately represented the class by vigorously litigating the case from the outset, conducting significant discovery into the facts, and securing a favorable settlement.

25. The proposal was negotiated at arm's length over the process of several months by experienced counsel.

26. The proposal provides adequate relief and treats class members equitably relative to each other. Each class member is being paid based on the same formula, which approximates their actual damages as closely as is feasible given the lack of recordkeeping by Moses and the tedious and time-consuming process of analyzing the data available. Each class member who elects to participate in the Settlement by submitting an IRS Form W-9 and a claim form, will receive payments based on the average weekly damage amount computed for the 14 plaintiffs and opt-in plaintiffs who previously consented to participate in this case, based on the time period that the records

indicate they performed DIRECTV work orders through David Moses or Endeavor Communications. Each will receive a minimum of $1,000.00 if they submit a valid claim form and valid IRS Form W-9.

27. The agreement provides a substantial benefit to those class members as it offers them the opportunity to receive a payment that they would not receive unless they filed their own suit and litigated the matter. If the settlement is not approved, DIRECTV has indicated that it will oppose class certification. Even if the Court were to certify a class, it is likely that the matter would not tried within the next year. And there is no guarantee that trial would result in a successful outcome for the proposed class members or finally settle the matter in their favor. In sum, the matter may drag on for many years and never result in any recovery to the class members. Further, the statute of limitations may present obstacles from those individuals obtaining recovery under the Fair Labor Standards Act. Moses stopped performing DIRECTV installations in July 2017, meaning the class members performed most, if not all, their work occurred more than 2 years ago. The settlement provides payment to class members based on a three-year period from when the Complaint was filed.

28. The proposed method of distributing relief to the class is effective. The process to file a claim is simple. The proposed claim form is attached as Exhibit B. The claim form advises each class member that they may participate in the settlement and offers instructions for doing so. To make a claim, the class member is required to do nothing more than sign the claim form, fill out an enclosed W-9, and return the forms to

Plaintiffs' Attorneys. Assuming the settlement is finally approved, checks will be mailed to the address provided within a reasonable amount of time.

29. The $256,594.86 that Plaintiffs' counsel is seeking as attorneys' fees, costs, and expenses in this case, includes their compensation for procuring a settlement on behalf of all Class Members, as well as the named plaintiffs and opt-ins. This amount will constitute Plaintiffs' counsel's sole compensation for the work done on this case. This amount will be paid at the same time as the payments to Plaintiffs, opt-in plaintiffs, and participating Class Members.

30. The parties have attached the settlement agreement, which is the only agreement made in connection with the proposal.

31. The Court should find that the settlement is likely to be approved and the class certified. Under the Rule, the Court must direct notice in a reasonable manner to all class members who will be bound by the proposal.

32. The parties have prepared the Notice that will be delivered via first-class mail to all class members. The Notice is attached as Exhibit C. The Notice adequately advises the Class Members about the proposed settlement, clearly identifies how they must file a claim under the settlement, includes the necessary paperwork to file a claim and a preaddressed envelope to return the claim, and it advises them of the steps that must be completed to opt out of or object to the settlement.

33. The parties request that the Court give preliminary approval to the settlement and schedule a hearing to consider any objections to the proposed settlement

as soon as practicable, but not less than 90 days from the date preliminary approval is granted.

34. Counsel for DIRECTV have reviewed the contents of this motion and do not oppose it.

## IV. CONCLUSION

35. The settlement here is a fair and reasonable resolution of a bona fide dispute, the parties are not negotiating around the FLSA's requirements, and the proposed settlement satisfies the elements of Rule 23. Plaintiffs' counsel believes that the Plaintiffs and Class Members would receive amounts that approximate what they likely could expect to receive if they prevailed at trial, and it prevents the uncertainty of further litigation.

**WHEREFORE**, Plaintiffs respectfully request that the Court grant their unopposed motion, conditionally approve the settlement in this action, conditionally certify the requested settlement class, authorize the issuance of the proposed notice of settlement to Class Members, and schedule a final fairness hearing.

Respectfully submitted
this 7th day of June 2019,


By: /s/ *Timothy A. Steadman*
    John Holleman - AR Bar #91056
    jholleman@johnholleman.net
    Timothy A. Steadman – AR Bar #2009113
    tim@johnholleman.net
    Jerry D. Garner - AR Bar #2014134
    jerry@johnholleman.net

    Holleman & Associates, P.A.
    1008 West Second Street
    Little Rock, Arkansas 72201
    Tel. 501.975.5040
    Fax 501.975.5041

    *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

    I, Timothy A. Steadman, certify that a true and accurate copy of the foregoing document was filed via CM/ECF on June 7, 2019, which will send notification to all counsel of record.

    A copy will also be sent via email to:

David Moses
endeavor.dmoses@yahoo.com
115 Belmont Place
Cabot, Arkansas 72023

                                                   */s/ Timothy A. Steadman*
                                                   Timothy A. Steadman